The STATE of Ohio, Appellee,

v.

GANN, Appellant.

[Cite as *State v. Gann*, 154 Ohio App.3d 170, 2003-Ohio-4000.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2002–05–110.

Decided July 28, 2003.

172

Robin N. Piper, Butler County Prosecuting Attorney, and Randi E. Froug, Assistant Prosecuting Attorney, for appellee.

Ravert J. Clark, for appellant.

WALSH, Judge.

{¶ 1} Defendant-appellant, George E. Gann, appeals from his conviction and sentence in the Butler County Common Pleas Court on four counts of illegal use of a minor in nudity-oriented material, two counts of attempted unlawful sexual conduct with a minor, two counts of compelling prostitution, and one count of disseminating matter harmful to juveniles.

{¶ 2} On August 16, 2001, Gann was indicted on six counts (Counts 1, 3, 5, 7, 9, and 13) of illegal use of a minor in nudity-oriented material or performance, pursuant to R.C. 2907.323(A)(1); six counts (Counts 2, 4, 6, 8, 10, and 14) of illegal use of a minor in nudity-oriented material or performance, pursuant to R.C. 2907.323(A)(3); two counts (Counts 11 and 17) of attempted unlawful sexual conduct with a minor, pursuant to R.C. 2923.02(A); two counts (Counts 12 and 15) of compelling prostitution, pursuant to R.C. 2907.21(A)(3); and one count (Count 16) of disseminating matter harmful to juveniles, pursuant to R.C. 2907.31(A)(1). The charges arose from allegations that Gann contacted several teenage girls via the Internet and, among other things, offered them money for sexual acts.

{¶ 3} In February 2002, Gann waived his right to a jury trial and was tried on the charges by the bench. Gann was found guilty on Counts 2, 8, 10, 11, 12, 14, 15, 16, and 17. He was found not guilty of the remaining charges. In April 2002, Gann was adjudicated a sexual predator pursuant to R.C. 2950.09(B). The trial court sentenced Gann to a total of five years and eight months in prison and fined him $5,000.

{¶ 4} Gann appeals from his conviction and sentence, raising six assignments of error.

### Assignment of Error No. 1:

{¶ 5} "O.R.C. 2907.323(A)(3) is unconstitutionally vague and overbroad."

{¶ 6} Gann argues that the trial court committed plain error by failing to find, sua sponte, that R.C. 2907.323(A)(3)[1] is unconstitutionally vague and overbroad. We disagree with this argument.

{¶ 7} The First Amendment's overbreadth doctrine prohibits a statute from criminalizing constitutionally protected conduct. See *State v. Gaines* (1990), 64 Ohio App.3d 230, 234, 580 N.E.2d 1158. The overbreadth doctrine "is limited in its application to laws in which the deterrence of protected activities is substantial. Where * * * a statute regulates conduct rather than pure speech, its overbreadth ' * * * must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' " *State v. Young* (1988), 37 Ohio St.3d 249, 251, 525 N.E.2d 1363, quoting *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830.

{¶ 8} In *Young,* the Ohio Supreme Court overruled an overbreadth challenge to R.C. 2907.323(A)(3), after construing that statute to prohibit "the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes *a lewd exhibition or involves a graphic focus on the genitals,* and where the person depicted is neither the child nor the ward of the person charged." (Emphasis added.) Id. at 252, 525 N.E.2d 1363. This aspect of the *Young* court's decision was affirmed in *Osborne v. Ohio* (1990), 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98.[2]

---

1.  {¶ a} R.C. 2907.323 provides:
    {¶ b} "(A) No person shall do any of the following:
    {¶ c} "* * *
    {¶ d} "(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies:
    {¶ e} "(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.
    {¶ f} "(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred."

2.  *Osborne* reversed *Young* on other grounds, see *Osborne,* 495 U.S. at 122–126, 110 S.Ct. 1691, 109 L.Ed.2d 98, which do not concern us here.

{¶ 9} Gann argues that the court's construction of R.C. 2907.323(A)(3) in *Young* still leaves the statute overbroad because, among other things, it includes within its purview "morally innocent states of nudity as well as lewd exhibitions." In support of his argument, Gann relies on Justice Brennan's dissenting opinion in *Osborne*, 495 U.S. at 126–148, 110 S.Ct. 1691, 109 L.Ed.2d 98. However, the majority in *Osborne* rejected Justice Brennan's view and found that R.C. 2907.323(A)(3), "as construed by the Ohio Supreme Court [in *Young* ], plainly survives overbreadth scrutiny." *Osborne*, 495 U.S. at 113–114, 110 S.Ct. 1691, 109 L.Ed.2d 98; see, also, *State v. O'Connor*, Butler App. No. CA2001–08–195, 2002-Ohio-4122, 2002 WL 1832865, at ¶ 12, quoting *Osborne*. The *Osborne* court further stated that by limiting R.C. 2907.323(A)(3)'s operation to cases where the minor's nudity "constitutes a lewd exhibition or involves a graphic focus on the genitals," "the Ohio Supreme Court avoided penalizing persons for viewing or possessing innocuous photographs of naked children." *Osborne*, 495 U.S. at 113–114, 110 S.Ct. 1691, 109 L.Ed.2d 98.

{¶ 10} Gann also argues that the *Young* construction of R.C. 2907.323(A)(3) uses terms that are unconstitutionally vague. Specifically, Gann argues that *Young* provided few clues as to the meaning of the phrase "lewd exhibition of nudity," and failed to supply an authoritative definition of the term "lewd exhibition." In support of this argument, Gann once again relies on Justice Brennan's dissent in *Osborne*, in which Brennan stated, "The 'lewd exhibition' and 'graphic focus' tests not only fail to cure the overbreadth of the statute, but they also create a new problem of vagueness."

{¶ 11} "A criminal statute is impermissibly vague only where it is so imprecise and indefinite that persons of ordinary intelligence * * * must necessarily guess at its meaning and differ as to its application." *Young*, 37 Ohio St.3d at 252, 525 N.E.2d 1363. A criminal statute is not tested for undue vagueness " 'on its face,' but rather with its 'judicial gloss,' that is, as it has been authoritatively construed by state courts." 1 LaFave & Scott, Substantive Criminal Law (1986) 127, Section 2.3.

{¶ 12} The terms "lewd exhibition" and "graphic focus on the genitals" are plainly susceptible of common understanding and give persons with ordinary intelligence fair warning as to what conduct is proscribed by R.C. 2907.323(A)(3). Furthermore, while the majority in *Osborne* did not expressly address whether the "lewd exhibition" and "graphic focus" tests are unconstitutionally vague, it is apparent that they did not find them to be so. In light of the foregoing, we conclude that the trial court did not commit error, plain or otherwise, in failing to find, sua sponte, that R.C. 2907.323(A)(3) is unconstitutionally vague or overbroad.

{¶ 13} Gann's first assignment of error is overruled.

Assignment of Error No. 2:

{¶ 14} "The trial court erred to the prejudice of Mr. Gann by entering a judgment of guilty based upon insufficient evidence."

{¶ 15} Gann argues that the state presented insufficient evidence to convict him on all but one of the counts (Count 16) on which he was found guilty. Gann presents five arguments in support of this assignment of error.

{¶ 16} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 17} In his first argument, Gann asserts that the state failed to prove that he attempted to engage in unlawful sexual conduct with a minor, as alleged in Counts 11 and 17 of the indictment, in violation of R.C. 2923.02 and 2907.04. Specifically, Gann asserts that the state presented insufficient evidence to establish that he took a "substantial step" towards engaging in unlawful sexual conduct with a minor, which was strongly corroborative of his purpose to commit that offense. We disagree with this argument.

{¶ 18} "A 'criminal attempt' is when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose. (R.C. 2923.02[A], construed.)" *State v. Woods* (1976), 48 Ohio St.2d 127, 2 O.O.3d 289, 357 N.E.2d 1059, paragraph one of the syllabus.

{¶ 19} In Count 11, Gann, who was approximately 29 years old at the time of the offense, was charged with attempting to engage in sexual conduct with J.B., a 14–year–old female.

{¶ 20} The state's evidence showed that J.B. and Gann communicated with each other over the Internet and telephone about four times a week over a period of several months, beginning in early December 2000, and extending to March 2001. Gann sent J.B. a picture of himself over the Internet. At one point, Gann asked J.B. to meet him at a movie theatre in neighboring Hamilton County. Gann told J.B. that he wanted to sit in the back row with her, have oral sex with her, "finger" her, and feel her "boobs." The encounter was to take place during

the time that J.B. was visiting her brother. J.B. initially agreed to meet with Gann at the movie theatre but later changed her mind after her brother encouraged her not to go, since Gann was so much older than she, and because J.B. "didn't feel comfortable going any ways [sic]." J.B. had her final communication with Gann in March 2001. She decided to stop communicating with him because she started feeling "really uncomfortable" about "talking about sexual things with someone older than me."

{¶ 21} The evidence establishes that Gann arranged to meet with J.B. at a specific location during the time J.B. was visiting with her brother. Gann also told J.B. that he wanted their encounter to take place in the back row, with the obvious purpose of concealing their activities. When the evidence is viewed in a light most favorable to the prosecution, we conclude that the state presented sufficient evidence to show that Gann took a substantial step, which was strongly corroborative of his criminal purpose, in a course of conduct planned to culminate in his engaging in sex with J.B., a minor.

{¶ 22} In Count 17, Gann was charged with attempting to engage in sexual conduct with M.N., a 15–year–old female. The state presented evidence showing that Gann contacted M.N. in May 2001 over the Internet. M.N. told Gann that she was 15 years old, even though she acknowledged listing her age as 16 on her Yahoo profile. Gann sent M.N. two photographs over the Internet, each showing a young girl engaging in fellatio. Gann said to M.N., "Look how much fun these little girls are having. You could have this much fun too." M.N. contacted one of her neighbors and showed her the photographs. The neighbor contacted the police.

{¶ 23} After the police arrived at M.N.'s house, Gann again contacted M.N. and asked to meet with her. The police instructed M.N. to agree to meet with him. Gann and M.N. agreed to meet at a Wendy's restaurant. Gann arrived by motor vehicle. When M.N. walked up to Gann's vehicle, Gann asked what they were going to do. At that point, the police arrested Gann. A box of unopened condoms was found in his vehicle.

{¶ 24} The foregoing evidence provides ample proof that Gann took a substantial step in a course of conduct planned to culminate in his engaging in unlawful sexual conduct with M.N., a minor. Furthermore, the conduct constituting the substantial step was strongly corroborative of Gann's criminal intent. Here, Gann not only arranged to meet with a female between the ages of 13 but less than 16, he actually showed up to meet her with a box of unopened condoms in his vehicle.

{¶ 25} In his second argument, Gann asserts that the trial court erred by finding him guilty of two counts (Counts 12 and 15) of compelling prostitution pursuant to R.C. 2907.21(A)(3). We agree with this argument.

{¶ 26} In Count 12, Gann was charged with knowingly paying or agreeing to pay N.T., a minor, to engage in sexual activity for hire, whether or not he knew her age, in violation of R.C. 2907.21(A)(3). In Count 15, Gann was charged with knowingly paying or agreeing to pay M.N., a minor, to engage in sexual activity for hire, whether or not he knew her age, in violation of R.C. 2907.21(A)(3). Both of these charges were third-degree felonies.

{¶ 27} R.C. 2907.21 provides:

{¶ 28} "(A) No person shall knowingly do any of the following:

{¶ 29} " * * *

{¶ 30} "(2) Induce, procure, encourage, solicit, request, or otherwise facilitate a minor to engage in sexual activity for hire, whether or not the offender knows the age of the minor;

{¶ 31} "(3) Pay or agree to pay a minor, either directly or through the minor's agent, so that the minor will engage in sexual activity, whether or not the offender knows the age of the minor[.]"

{¶ 32} As to Count 12, the evidence showed that Gann said to N.T., "Well if I through [sic, throw] in a few bucks would that help * * * with you wanting to have sex with me." N.T. told Gann, "No." N.T. said that she was "pissed off" by the offer and that she ended the conversation. N.T. testified that Gann e-mailed an apology to her, but she never spoke with him again. As to Count 15, M.N. testified that Gann offered to give her $20 for a "blow job." However, M.N. never agreed to engage in sexual activity with Gann.

{¶ 33} We conclude that while this evidence would have been sufficient to convict Gann of compelling prostitution pursuant to R.C. 2907.21(A)(*2*), it was insufficient to convict him of compelling prostitution pursuant to R.C. 2907.21(A)(*3*). Under R.C. 2907.21(A)(2), Gann could have been convicted under both Counts 12 and 15 for inducing, encouraging, soliciting, requesting, or otherwise facilitating a minor to engage in sexual activity. However, Gann was not charged in Counts 12 and 15 with violating R.C. 2907.21(A)(*2*). Instead, Gann was charged in those counts with violating R.C. 2907.21(A)(*3*).

{¶ 34} In order to obtain a conviction for violating R.C. 2907.21(A)(3), the state is required to show that the alleged offender paid or agreed to pay a minor, either directly, or through the minor's agent, so that the minor would engage in sexual activity. The evidence showed that Gann never paid N.T. or M.N., either directly or through their agents, so that the minors would engage in sexual

activity. Thus, the issue boils down to whether Gann *agreed to pay* either N.T. or M.N., either directly or through their agents, so that the minors would engage in sexual activity.

{¶ 35} R.C. Chapter 2907 does not define the phrase "agree to pay." Therefore, the phrase must "be read in context and construed according to the rules of grammar and common usage." R.C. 1.42. Webster's defines "agree" as "to indicate willingness: consent" and "to achieve harmony * * *: become of one mind[.]" Webster's Third New International Dictionary (1993) 43. Consequently, in order to prove the "agree to pay" element for purposes of obtaining a conviction pursuant to R.C. 2907.21(A)(3), the state must show that there was an agreement or "meeting of the minds" between the offender and the victim (or the victim's agent) that the minor would engage in sexual activity in return for payment.

{¶ 36} Here, there was no showing of an agreement or meeting of the minds between Gann and either N.T. or M.N. While Gann offered to pay N.T. and M.N. to engage in sexual activity with him, neither N.T. nor M.N. showed any willingness to do so. While Gann's conduct constitutes a violation of R.C. 2907.21(A)(2), it does not constitute a violation of R.C. 2907.21(A)(3), because it fails to show an agreement or meeting of the minds between Gann and N.T. or M.N. (or their agents). Thus, evidence showing that Gann offered to pay N.T. and M.N. to engage in sexual activity was insufficient to show that he had "agreed to pay" N.T. and M.N. to engage in sexual activity, because there was no evidence to show an agreement or meeting of the minds between Gann and N.T. or M.N. that N.T. or M.N. would engage in sexual activity in return for payment from Gann. The state simply charged Gann under the wrong subsection of R.C. 2907.21(A). As a result, while the state produced sufficient evidence to charge and convict Gann with violating R.C. 2907.21(A)(2), the state failed to produce sufficient evidence to convict Gann of violating R.C. 2907.21(A)(3). Therefore, Gann should have been acquitted on the compelling prostitution charges set forth in Counts 12 and 15.

■ {¶ 37} In his third argument, Gann asserts that the state failed to prove that the individuals depicted in the material forming the basis for Counts 2, 8, and 10 were actual persons, or that they were minors. We disagree with this argument.

{¶ 38} Count 2 was based on a photograph entitled "Bab07.jpg." The photograph depicts a young girl, who is substantially under the age of 18, lying down, with her legs spread apart, and with the girl exposing her genitals. Count 8 was based on a video entitled "Maria02.mpg." The video shows a nude young female, who is substantially younger than 18 years of age, engaging in sexual intercourse. Count 10 is based on a video entitled "17hotelfuck.mpg." This video also depicts

a nude young female, who is substantially younger than 18 years of age, engaging in sexual intercourse.

{¶ 39} The trial court found that it had "no problem, absolutely none" in finding Gann guilty on Count 2, and it further found that the persons depicted in the evidentiary material that formed the basis of Counts 8 and 10 were minors who were under the age of 18.

{¶ 40} In *Young*, 37 Ohio St.3d at 258, 525 N.E.2d 1363, the court rejected an argument similar to the one being raised by Gann here:

{¶ 41} "Appellant Osborne further argues that no proof was offered that the subject in the photographs was a minor. We cannot agree with appellant's contention that the minority of the person depicted was not demonstrated in the evidence. The majority of the photographs speak for themselves. The person depicted is obviously under the age of eighteen by a substantial margin, and a jury would have been clearly justified in finding, beyond a reasonable doubt, that the subject was a minor."

{¶ 42} Gann argues, however, that *Young* was decided at a time when "the advanced computer technology now available to the general public did not exist." Gann asserts that under today's technology, it "is almost impossible to determine from looking, if an image in a photograph is true and unaltered, computer generated in whole or in part, or morphed." However, Gann never presented any evidence to show that the persons depicted in the evidentiary exhibits used to prove Counts 2, 8, and 10 were not actual persons but, instead, were computer generated or morphed, nor did Gann present any evidence showing that these persons were 18 years old or older. As in *Young*, the photograph and videos that form the basis for the charges in Counts 2, 8, and 10 "speak for themselves." Consequently, the trial court did not commit error by finding Gann guilty of Counts 2, 8, and 10.

{¶ 43} In his fourth argument, Gann asserts that the state failed to prove that he recklessly possessed the material that formed the basis for the charges in Counts 2, 8, 10, and 14. Gann asserts that while the state proved that the files forming the basis of the charges were transferred to Gann's computer, it failed to prove that Gann accessed the files or had knowledge or notice of their contents. We find this argument unpersuasive.

{¶ 44} Gann was charged in Counts 2, 8, 10, and 14 with recklessly possessing material that showed a minor, who was not Gann's child or ward, in a state of nudity where the nudity constituted a lewd exhibition or involved a graphic focus on the genitals, in violation of R.C. 2907.323(A)(3). "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a

certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶ 45} In order to establish that the defendant recklessly possessed the material that forms the basis of a charge under R.C. 2907.323(A)(3), the state must show "that the defendant had some notice of the character of the material possessed." *Young*, 37 Ohio St.3d at 253, 525 N.E.2d 1363. "[O]nly those who are on notice as to the illicit character of the material are subject to criminal penalties."

{¶ 46} "The state may prove the required notice by demonstrating, for example, the defendant's attempts to conceal the material or to disguise his ownership, his possession of a massive amount of such material, or the obviousness of the character of the material. *Mishkin v. New York* (1966), 383 U.S. 502, 511 [86 S.Ct. 958, 964 16 L.Ed.2d 56]. The state need not prove that the accused was aware of the *actual content* of the material, but only that he was on notice as to its nature or character. See *State v. Burgun* (1978), 56 Ohio St.2d 354, 363–364, 10 O.O.3d 485, 384 N.E.2d 255 * * *." (Emphasis sic.) *Young*, 37 Ohio St.3d at 253–254, 525 N.E.2d 1363.

{¶ 47} Here, the state presented ample evidence to demonstrate that Gann was on notice of the nature and character of the files he downloaded. The state's computer expert, Detective Richard Sweeney, testified that he recovered from Gann's hard drive over 500 images; numerous, sexually explicit chat-room conversations; and chat logs that revealed numerous requests for child pornography. Sweeney's testimony revealed that the files had been intentionally transferred to a directory created by the computer's user. The images and short videos taken from Gann's hard drive had not been deleted, but had been categorized and sorted into different directories. There was also circumstantial evidence that Gann had, indeed, accessed the files. In light of these facts, the trier of fact could reasonably infer that Gann was aware of the pornographic images found on his computer.

{¶ 48} In his fifth argument, Gann asserts that the state failed to prove the "lewd exhibition" element required to obtain a conviction for illegal use of a minor in nudity-oriented material or performance in Counts 2, 8, 10, and 14. We disagree with this argument.

{¶ 49} "R.C. 2907.323(A)(3) prohibits the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor the ward of the person charged." *Young*, 37 Ohio St.3d at 252, 525 N.E.2d 1363. "Lewd" is defined as "[o]bscene or

indecent; tending to moral impurity or wantonness * * *." Black's Law Dictionary (7th Ed.1999) 919.

{¶ 50} The charge in Count 2 was based on a photograph labeled, "bab07.jpg," which depicts a child, substantially younger than 18, with her legs spread apart, pushing aside the crotch of her underwear to expose her genitals for viewing. The photograph is obscene or indecent and tends to show moral impurity or wantonness. The photograph also focuses graphically on the victim's genitals.

{¶ 51} The charge in Count 14 was based on a photograph of A.G., entitled 172.139.107, a smaller version of which was marked as state's exhibit 11(C). A.G., who was 16 years old at the time, is shown in a lascivious and licentious manner. A.G. is shown bending over, looking back at the camera, with her bare buttocks exposed. Essentially, the picture shows A.G. "mooning" the camera lens. Looked at in the light most favorable to the state, the photograph is obscene or indecent, and tends to show moral impurity or wantonness.

{¶ 52} The charge in Count 8 was based on a video entitled "Maria02.mpg." As stated earlier, the video depicts a nude young female, who is substantially younger than 18 years of age, engaging in sexual intercourse. Looked at in the light most favorable to the state, the video is obscene or indecent and tends to show moral impurity or wantonness.

{¶ 53} The charge in Count 10 was based on a video entitled "17hotel-fuck.mpg." As stated earlier, the video depicts a nude young female, who is substantially younger than 18 years of age, engaging in sexual intercourse. Looked at in the light most favorable to the state as it must be, see *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, the video is obscene or indecent, and tends to show moral impurity or wantonness.

{¶ 54} Gann's second assignment of error is sustained in part and overruled in part.

## Assignment of Error No. 3:

{¶ 55} "Mr. Gann was denied his constitutional guarantee of effective assistance of trial counsel."

{¶ 56} Gann argues that his trial counsel provided him with constitutionally ineffective assistance by failing to call an expert witness on computers to contradict the testimony of the state's expert that he (Gann) recklessly possessed the material that was the subject of Counts 2, 8, 10, and 14. Gann further argues that his counsel was constitutionally ineffective for failing to raise, and thereby preserve for review, the issue of whether R.C. 2907.323(A)(3) is unconstitutionally vague or overbroad. We disagree with these arguments.

{¶ 57} To prevail on an ineffective-assistance-of-counsel claim, a criminal defendant must first show that his trial counsel's performance was deficient. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. This requires the defendant to show that his "counsel's representation fell below an objective standard of reasonableness." Id. at 688, 104 S.Ct. 2052, 80 L.Ed.2d 674. Second, the defendant must show that he was prejudiced by his counsel's deficient performance. Id. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. This requires the defendant to show that there is a reasonable probability that but for his counsel's unprofessional errors, the outcome of the proceeding would have been different. Id. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. A failure to make either showing will doom the defendant's ineffective assistance claim. Id. at 687, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 58} Gann cannot show on this record that his trial counsel provided him with constitutionally ineffective assistance of counsel by failing to call an expert witness on computers who could have rebutted the testimony of the state's expert. The record not only fails to show *what* such an expert's testimony would have been but also that *any* such expert witness could have been called who would have been willing to testify favorably on Gann's behalf. Hence, Gann cannot demonstrate on this record that his counsel's decision not to call an expert witness on his behalf fell below an objective standard of reasonableness or that there is a reasonable probability of a different outcome had Gann's trial counsel presented such expert testimony.

{¶ 59} Gann also argues that his counsel provided him with constitutionally ineffective assistance by failing to raise, and thereby preserve for review, the issue of whether R.C. 2907.323(A)(3) was constitutionally vague and overbroad. We reject this argument on the basis of our disposition of Gann's first assignment of error.

{¶ 60} Gann's third assignment of error is overruled.

Assignment of Error No. 4:

{¶ 61} "Mr. Gann's convictions are against the manifest weight of the evidence."

{¶ 62} While acknowledging that the standards of review between an insufficiency-of-the-evidence claim and a manifest-weight-of-the-evidence claim are different, Gann argues that the reasoning and authority which supports the arguments advanced under his second assignment of error are applicable under this assignment of error as well.

{¶ 63} When reviewing a manifest-weight-of-the-evidence claim, an appellate court must examine the evidence presented, including all reasonable inferences that can be drawn from it, and consider the credibility of the witnesses, to determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. It must be remembered, however, that the weight to be given the evidence presented and the credibility of the witnesses are primarily matters for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The trier of fact's decision is owed deference, since the trier of fact is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.

{¶ 64} Initially, we have already found with respect to Gann's second assignment of error that the trial court erred in finding Gann guilty on the two counts of compelling prostitution (Counts 12 and 15). Thus, this portion of Gann's fourth assignment of error has been rendered moot. See App.R. 12(A)(1)(c).

{¶ 65} As to the remainder of Gann's manifest-weight claim, we conclude that there was sufficient, and often ample, evidence to support Gann's conviction on the remainder of the counts on which he was convicted. Accordingly, Gann's fourth assignment of error is overruled.

### Assignment of Error No. 5:

{¶ 66} "The court erred in classifying Mr. Gann as a sexual predator."

{¶ 67} Gann argues that the trial court erred in classifying him as a sexual predator in light of the arguments raised in his previous assignments of error. We disagree with this argument.

{¶ 68} A "sexual predator" is a person who "has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E)(1). The trial court that sentences an offender who is convicted of or pleads guilty to a sexually oriented offense is required to conduct a hearing to determine whether the offender is a sexual predator. See R.C. 2950.09(B)(1). In order to determine whether an offender is a sexual predator, the trial court must consider the factors listed in R.C. 2950.09(B).[3] These factors include the offender's and victim's ages,

---

**3.** These factors, which were formerly listed in R.C. 2950.09(B)(2), are now listed in R.C. 2950.09(B)(3)(a) through (j).

and the offender's previous criminal record regarding all offenses he may have committed. The trial court has discretion to determine what weight, if any, it will assign to each factor. *State v. Thompson* (2001), 92 Ohio St.3d 584, 588, 752 N.E.2d 276. Additionally, the trial court may consider other factors not expressly listed in R.C. 2950.09(B). Id.

{¶ 69} The trial court must find that the offender is a sexual predator by clear and convincing evidence. See R.C. 2950.09(B)(4). "Clear and convincing evidence is that measure or degree of proof which * * * will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 70} Gann was interviewed by two psychologists who came to differing conclusions about the likelihood of whether Gann would commit another sexual offense. Dr. Roger H. Fisher, a clinical psychologist, concluded that Gann's likelihood of committing another sexual offense was "quite remote." However, Dr. Bobbie G. Hopes, a forensic psychologist, concluded that Gann "has a high risk of committing one or more sexually oriented offenses in the future." In support of her conclusion, Hopes noted that Gann has prior convictions for, among other things, assault, and that prior convictions for violent offenses are associated with increased risk of recidivism. Hopes also found that Gann's Internet activities "involved extensive hours on the Internet chat rooms with logs that showed a voluminous and long-term pattern of engaging in sexual conversations, requests to meet, and offers of money in exchange for sex with persons whom he believed to be minors." Hopes found that the intensity of Gann's interest in such deviant sexual activity is among the "best predictors of sex offense recidivism."

{¶ 71} The trial court was entitled to give Dr. Hopes's report greater weight than Dr. Fisher's. See *DeHass*, 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus (weight to be given the evidence is primarily a matter for the trier of fact). Furthermore, the trial court found that Gann had neither accepted responsibility for his offenses, understood the seriousness of them, nor demonstrated any remorse for them. Under these circumstances, we conclude that there was sufficient evidence presented to support the trial court's determination that Gann is a sexual predator.

{¶ 72} Gann's fifth assignment of error is overruled.

### Assignment of Error No. 6:

{¶ 73} "The court erred in imposing consecutive sentences without making the requisite findings of fact."

{¶ 74} Gann argues that the trial court erred by imposing consecutive sentences without making the necessary findings of fact required by R.C. 2929.14(E)(4). Gann also argues that the trial court failed to state sufficient supporting reasons for imposing consecutive sentences, as required by R.C. 2929.19(B) through (2)(c). We disagree with these arguments.

{¶ 75} At Gann's sentencing hearing, the trial court made all of the findings of fact necessary under R.C. 2929.14(E)(4) to impose consecutive sentences. The trial court found that consecutive sentences were necessary to protect the public from future crime and to punish Gann, and were not disproportionate to the seriousness of Gann's conduct and to the danger Gann poses to the public. The trial court also found that two of the three circumstances set forth in R.C. 2929.14(E)(4)(a) through (c) were present. Specifically, the trial court noted that "the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of [Gann's] conduct and his history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime." See R.C. 2929.14(E)(4)(b) and (c).

{¶ 76} Also, the trial court adequately stated its reasons for imposing consecutive sentences, as required by R.C. 2929.19(B)(2)(c). Among other things, the trial court found that the sex-offender treatment program (i.e., the Polaris Program) available to offenders like Gann in the prison system provided for a longer treatment program than Gann would otherwise receive outside it. The trial court stated that the Polaris Program was "a much more appropriate program" for Gann, since the trial court was not satisfied that Gann had "come to grips with the seriousness of his conduct and the damages that it causes." The trial court further stated that it still had not received an explanation from Gann as to why he pursued contacts with the female minors who were victimized by his actions.

{¶ 77} Gann's sixth assignment of error is overruled.

{¶ 78} The trial court's judgment is affirmed in part and reversed in part. Gann's two convictions for compelling prostitution (Counts 12 and 15) are reversed, and this cause is remanded to the trial court for resentencing and any other action that may be required as a result of this opinion. Gann is ordered discharged as to Counts 12 and 15.

Judgment affirmed in part,
reversed in part
and cause remanded.

VALEN, P.J., and POWELL, J., concur.